# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| Scottsdale Insurance Co., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No.: 2:11-cv-2622-PMD |
| v. ) | |
| ) | |
| Alexander Collins, ) | **ORDER** |
| ) | |
| Defendant. ) | |

This matter is before the Court upon Plaintiff Scottsdale Insurance Company's ("Scottsdale") Motion for Summary Judgment filed in its Declaratory Judgment action seeking a determination of its liability arising under a contract for insurance issued by it to Defendant Alexander Collins ("Collins"). For the reasons that follow, Scottsdale's Motion is granted.

## BACKGROUND

On November 16, 2010, Collins, a citizen of South Carolina, applied for insurance for a home he was about to close on through the Frank Siau Agency ("Agency"). The Agency sells insurance policies through a broker, Johnson and Johnson, who then acts on behalf of the insurer, Scottsdale, an Ohio company.[1] With the assistance of agent Theresa Johnson ("Johnson"), an employee of the Agency, Collins completed and submitted an application for insurance. Relying on the information contained in Collins's application, Scottsdale issued a six (6) month[2] "Dwelling and Habitational Fire Policy" ("Policy"), which provided Dwelling Limits of $390,000.00 in the event of total loss.

---

[1] *See* S.C. Code Ann. § 38-43-10 (Supp. 1987).

[2] According to Johnson, a six (6) month time frame is typical because Collins was about to start renovations on the home. The Policy is called a DP1 Policy—dwelling under renovations. Upon completion of the home, a more permanent policy would be issued to reflect the updates made to the home.

1

On or about December 9, 2010, Collins's property was damaged by fire, and Collins filed a claim under the Policy for the full $390,000.00. In the course of investigating the claim, Scottsdale discovered that Collins had misrepresented material facts in his application. Specifically, facts about his past losses and the purchase price for the home. In the section of the Policy that deals with "Conditions," it states:

> **C.     Concealment Or Fraud**
>
> We provide coverage to no person insured under this policy if, whether before or after a loss, one or more persons insured under this policy have:
>
> **1.**    Intentionally concealed or misrepresented any material fact or circumstances;
>
> **2.**    Engaged in fraudulent conduct; or
>
> **3.**    Made false statements relating to his insurance.

Accordingly, on September 28, 2011, Scottsdale informed Collins that it was rescinding the Policy and issued him a full refund for the premium amount. Scottsdale filed a Declaratory Judgment action seeking a declaration that it may void the Policy based on material misrepresentations in the application and deny Collins's claim. Collins raised several defenses in his response. Then on April 27, 2012, Scottsdale filed a Motion for Summary Judgment, now before the Court.

The facts in the light most favorable to Collins are as follows. Prior to meeting with Johnson, Collins went to Allstate in hopes of securing insurance. At Collins's deposition, he stated that after he gave the agent the address of the home, the agent told him the home was very old and was worth around $600,000.00. However, because he planned to do renovations, Allstate could only issue him a policy up to $390,000.00. This information was printed out and given to Collins. Allstate then determined that it could not secure a policy because the policy on Collins's

2

current home had been non-renewed. Collins left with the printout and went to the Agency where he met with Johnson. Collins told Johnson that he had gone to Allstate and gave her the printout. An application for insurance was then filled out by Johnson who, out loud, asked Collins several questions and typed his answers directly into the application on her computer.  Relevant here was the following question and answer as it appears on the application:

> Q: Past Losses?
>
> A: None

Additionally, the first page of the application indicated that the purchase price for the home was $390,000.00.  The application was handed to Collins who signed it and gave Johnson a personal check for $1,694.94 to cover the full premium amount. The entire process of procuring the insurance took about thirty minutes.

It is undisputed that Collins actually purchased the home that Scottsdale insured for $20,000.00. It is also undisputed that eight fire events have occurred on various properties that either Collins owned or had an interest in. The most recent fire took place approximately two or three years ago at his wife's shop, the Bargain Barn Floral Gift, which Collins testified is located on property he owns, but his wife filed the claim.

Johnson testified that although she does not recall every detail of her meeting with Collins, she routinely downloads an application, the relevant questions pop up, and she asks them to the applicant and types the answers into the application. The application is printed for the applicant to review and then both the agent and the newly insured sign.  Johnson stated that she could not recall exactly how she phrased the fifteen questions on the application, but she routinely asks the questions in her own words so they are clear. Johnson testified that she could not recall if she limited the inquiry into Collins's past losses to a certain number of years. She

3

stated that most carriers want to know about any losses within the last five years, so she may have limited the question to five years. However, as far as she knew, there was no such limitation in this Policy. She said that she entered "no" in response to this question based on what Collins said to her. Collins, however, testified that Johnson did not ask him about past losses at all, but then in a follow-up question, he stated that he thinks she did ask him if he had a loss, but only in a certain time limit, however he couldn't recall if it was in the past one year or five years. Collins Aug. Depo 24:12-25; 25: 1-21.

When Johnson was asked where the purchase price amount of $390,000.00 came from, she testified: "Apparently he must have gave me that amount in order for me to put it there because these are questions that I ask [the applicant] and [the applicant] tell[s] me and I put it in the system." Johnson Depo 18:8-14. Johnson stated that Collins told her the home was older, built in the 1900s, and he was going to renovate it. She then advised Collins that "we write [DP1 Policies] for the value of the house after repairs slash additions." Johnson Depo 48:1-14. Johnson confirmed that with a house under renovations policy, it is her understanding that the value is based on the purchase price or the value of the house plus the amount of the fix. Johnson Depo 55:15-25. On cross-examination, Johnson stated she could not recall any specific conversation with Collins regarding how much he was going to pay for the house. Additionally, Johnson was asked if she possibly extrapolated the value of the Policy from the Allstate quote Collins gave her, which provided $390,000.00 in dwelling protection limits of liability, and she answered: "Between [the Allstate quote] and the conversation with the insured. Yes, sir." Johnson Depo 56:16-23. She also stated that it was not routine to verify what the purchase price was for the house, instead, the agents rely on what the insured tells them.

4

Collins testified that the $390,000.00 amount in the quote from Allstate did not come from him, but was given to him by the Allstate agent. He stated that he didn't know the actual value of the home or what amount of insurance would be appropriate so, at that moment, he was going to go with what the agent told him. He also stated that he knew $20,000.00 was a good deal on the home because of its age, style, and his ability to fix it up.[3]  Collins testified that he gave the Allstate quote to Johnson at the beginning of their meeting after she asked him if he had checked somewhere else.

## STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered when a moving party has shown by citing to the record "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The evidence presents a genuine issue of material fact if a "reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). The moving party bears the burden of proving that there are no facts from which a jury could draw inferences favorable to the non-moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Once the moving party makes this showing, the opposing party must set forth specific facts showing there is a genuine issue for trial. *Id.*  Summary judgment should only be granted in those cases where it is perfectly clear that there remains no genuine dispute as to material facts and inquiry into the facts is unnecessary to clarify the application of the law. *McKinney v. Bd. of Tr. of Maryland Cmty. Coll.*, 955 F.2d 924, 928 (4th Cir.1992).

---

[3] Collins has been a carpenter for twenty years, operating under his business, C and C Home Improvements.

## ANALYSIS

### I. Declaration that the Policy is *Void Ab Initio*

Scottsdale contends that the Policy should be declared *void ab initio* because: (1) Collins materially misrepresented his "Past Losses" and his purchase price for the home in his insurance application; (2) Collins knew these statements were false when he signed the application; (3) Collins's misrepresentations were material to Scottsdale's decision to issue the Policy; (4) Scottsdale relied upon these misrepresentations; (5) Collins had intent to mislead and defraud Scottsdale; and (6) there is no genuine issue of material fact for a jury to decide. Collins contends that a question of fact exists with regard to whether (1) he was asked any questions contained on the application; (2) he was specifically asked questions concerning the claims history and the purchase price; (3) he misrepresented the value of the residence; and (4) he misrepresented his claims history.

Under South Carolina law, an insurer may avoid coverage under an insurance policy when it establishes that: (1) the insured made a false statement in the insurance application; (2) that the insured knew was false when made; (3) that was material to the risk covered in the policy; (4) that the insurer relied on; and (5) that was made with the intent to deceive. *Gasque v. Voyager Life Ins. Co. of South Carolina*, 288 S.C. 629, 632-33 (1986); *Strickland v. Prudential Ins. Co. of Am.*, 278 S.C. 82, 86 (1982); *United Ins. Co. of Am. v. Stanley*, 277 S.C. 463, 465 (1982).

Collins does not dispute that the representations on his application that he purchased the home for $390,000.00 and that he had no past losses are false. Nor does he dispute that he knew the purchase price was $20,000.00 or that he knew he had suffered past losses. Further, Collins does not argue that information regarding past losses is not material to the risk being assumed by

Scottsdale. Therefore, the issues before the Court are whether the purchase price is material to the risk covered in the Policy, and whether the misrepresentations as to Collins's purchase price and past losses were made with the intent to deceive Scottsdale.

    A.    <u>Material</u>

"A misstatement of material facts by the applicant takes away [the insurer's] opportunity to estimate the risk under its contract." *Southern Farm Bureau Cas. Ins. Co. v. Ausborn*, 249 S.C. 627, 637 (1967). In *Atlantic Life Ins. Co. v. Hoefer*, 66 F.2d 464 (4th Cir. 1933), the court in discussing the materiality requirement, stated:

> [A] representation is material when reasonably careful and intelligent men would regard the fact involved as substantially increasing the chances of the loss insured against; and that this is especially true when the insurer, on becoming aware of the fact, would raise the rates or reject the risk altogether.

*Id.* at 466. More recently, in *Ausborn*, the court stated:

> A representation is material when the insured knows or has reason to believe that it will likely affect the decision of the insurance company as to the making of the contract of insurance or as to its terms.

*Ausborn*, 249 S.C. at 638.

Here, Collins contends that the purchase price is not material to either the coverage limits or the premium. This position is directly contradicted by Scottsdale, as stated by underwriting specialist Kevin P. Brown: "The difference in the actual purchase price of the subject property versus the amount represented by Mr. Collins on his application for insurance was material to Scottsdale. Scottsdale would not have allowed the policy to be issued as issued . . . had it known the true purchase price." Brown Aff. ¶ 9. Collins does not provide any contrary affidavits, but simply states that "whether the home was purchased for the $20,000 or the $390,000 *does not appear* to have affected either the premium or the insurability of the property." Def.'s Opp.

7

Motion at viii (emphasis added). Although Collins stated his opinion that such a fact does not appear to be material, the record establishes that Scottsdale would not have issued the policy, at least as issued, had it know the real purchase price. Further, a finding of materiality is supported by the significant difference between $20,000.00 and $390,000.00. If the actual purchase price was known to the insurance company, it probably would have either postponed the application so it could have evaluated the true worth of the home or it would have proceeded to insure the home, not based on Allstate's approximate valuation, but based on the actual purchase amount to lower the risk it was assuming. Surely a reasonable person, aware of the huge discrepancy between these amounts, would believe that knowledge of the actual purchase price would likely affect the decision of the insurance company. Therefore, the misrepresentation is necessarily material. *See Reliance Nat. Ins. Co. (Europe) Ltd. v. Hanover*, 222 F. Supp. 2d 110, 117 (D. Mass. 2002) ("To be material, the fact must be 'something which would have controlled the underwriter's decision' to accept the risk.").

    B.    <u>Intent to Deceive</u>

Scottsdale contends that Collins had no plausible, reasonable explanation for the discrepancies in his representations made in his application, and therefore, asks the Court to infer that Collins intended to deceive Scottsdale when seeking insurance coverage.

Generally, "whether a misstatement of fact in the application was made with the intent to deceive and defraud the insurer is a question for determination by the jury." *Bennett v. Am. Hallmark Ins. Co. of Texas*, No. 5:10-1600, 2011 WL 2936003, at *4 (D.S.C. July 18, 2011) (*citing Arnold v. Life Ins. Co.*, 226 S.C. 60, 69 (S.C. 1954)). However, "intent to deceive may be inferred when there is no other reasonable or plausible explanation for the applicant's false representation." *Floyd v. Ohio Gen. Ins. Co.*, 701 F. Supp. 1177, 1190 (D.S.C. 1988). *See also*

*Phillips v. Life & Cas. Ins. Co. of Tennessee*, 226 S.C. 336, 342 (1954) (directed verdict for insurer proper when "only reasonable inference warranted by the evidence is that the policy was procured by fraudulent misrepresentation"); *Ausborn*, 249 S.C. at 636-37 (intent to deceive may be deduced from circumstances surrounding the application).

Collins admitted that the answers as indicated on the application regarding his past losses and the purchase price of his home were false and untrue. In fact, there have been approximately eight fires in the past on property that either Collins owned or had an interest in, and Collins bought the home for only $20,000.00. As noted above, Collins testified that he thinks Johnson limited the inquiry into his past losses to a certain number years, but he couldn't recall how many years. Johnson, however, testified that although she could not recall whether she limited the question, if she had done so, it would have likely been within the past five years. It is undisputed that Collins knew he had endured a loss on one of his properties due to fire within the past five years. Further, Collins knew that there had been approximately *eight* fire-related losses on his properties in the past, many of which resulted in claims being filed and paid out. Thus, based on this history, it is logical to assume that Collins is familiar with the insurance business enough to know that one's past losses is a significant factor to an insurance carrier upon procuring insurance. In any event, the Court finds that Collins's misrepresentation regarding the purchase price was intentional and based on that misrepresentation alone, Scottsdale may void the policy.

The only reasonable inference for why Collins gave Johnson the Allstate quote, valuing the house at $390,000.00, is that he intended to deceive and defraud Scottsdale. Upon doing so, Collins new that the agent would first rely on that quote's valuation of the home and thus, it would be up to him to clarify or disclose how much he actually paid for the home. Instead, in the course of filling out the application with Johnson, Collins deliberately suppressed the truth—that

9

he purchased the home for only $20,000.00. On the very first page of the application it reads: Purchase price: $390,000.00. Collins, who does not contend that he cannot read, signed the application falsely indicating a vastly larger purchase price amount. At the bottom of the application, above Collins' signature, it states:

> I have read the above application and I declare that to the best of my knowledge and belief all of the foregoing statements are true, and that these statements are offered as offered as an inducement to us to issue the policy for which I am applying.

Thus, Collins ratified the application by signing it and no one knew better than him that this representation was severely inaccurate and would induce Scottsdale to issue a policy. *See Floyd*, 701 F. Supp. at 1188 (stating that when insured signed the application, he adopted the statements therein as his own); *see also Winburn v. Minnesota Mut. Life Ins. Co.*, 261 S.C. 568, 573-75 (S.C. 1973) (finding that policy was procured by fraud even though the applicant contended that a third party had filled out the application). Therefore, in viewing the facts in the light most favorable to Collins, as the Court must on summary judgment, the Court finds that there is no genuine issue of fact because there is simply no other reasonable or plausible explanation for Collins's misrepresentation regarding the purchase price other than to defraud Scottsdale.

## CONCLUSION

For the foregoing reasons, Scottsdale's Motion for Summary Judgment in its action seeking a declaration that the Policy is *void ab initio* is **GRANTED**.

**AND IT IS SO ORDERED.**

PATRICK MICHAEL DUFFY
United States District Judge

**June 25, 2012**
**Charleston, SC**